**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| DOUGLAS CANTEY, | : | |
| | : | Civil Action No. 17-3010 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**CHESLER**, District Judge:

Presently before the Court is Petitioner Douglas Cantey's motion to vacate his sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 1). Following an order to answer, the Government filed a response to the motion (ECF No. 14), to which Petitioner replied. (ECF No. 16). For the reasons set forth below, this Court will deny the motion and deny Petitioner a certificate of appealability.

## I. BACKGROUND

In June 2011, Petitioner Douglas Cantey was convicted of access device fraud and sentenced to time served accompanied by a three year period of supervised release. (Docket No. 10-61 at ECF No. 20). In May 2013, Petitioner was charged with a violation of probation and attorney Paul Condon was appointed to represent him in that matter. (Docket No. 10-61 at ECF Nos. 23-24). Petitioner ultimately pled to failure to pay restitution and was ordered to resume paying restitution on a monthly schedule but was otherwise permitted to remain on supervised release. (Docket No. 10-61 at ECF nos. 29-30). In October 2014, however, Petitioner received

a second violation arising out of the criminal actions which gave rise to his underlying criminal charges in this matter, including the purchase of several thousand dollars of luxury items using stolen credit cards. (Docket No. 10-61 at ECF No. 31-35). Paul Condon was once again appointed to represent Petitioner. (Docket No. 10-61 at ECF No. 36). As a result of counsel's negotiations with the Government, however, all but one violation charge were dismissed, and Petitioner ultimately pled only to leaving the district without permission, resulting in the revocation of his supervised release and a twenty month prison sentence imposed on October 30, 2014. (Docket No. 10-61 at ECF No. 38).

Several months later, in late January 2015, the Government filed a criminal complaint against Petitioner arising out of his use of the stolen credit cards. (Docket No. 15-546 at ECF No. 1). Paul Condon was once again appointed to represent Petitioner in that criminal matter. (Docket No. 15-546 at ECF No. 5). Following negotiations with the Government, on September 2, 2015, Petitioner ultimately agreed to plead guilty to a two-count information charging him with knowingly and willfully conspiring to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, and one count of knowingly transferring, possessing and using, without lawful authority, a means of identification of another individual during and in relation to the commission of the wire fraud conspiracy in violation of 18 U.S.C. §§ 1029A and 2. (Docket No. 15-546 at ECF No. 17). In exchange for this guilty plea, the Government agreed to seek no further charges against Petitioner arising out of his use of stolen credit cards on February 17, April 9, and October 3, 2014, to make numerous purchases with a total loss amount of nearly sixty-thousand dollars. (*Id.* at 1, 8). The plea agreement fully explained the applicable statutory minimum and maximum sentences Petitioner faced, set forth numerous stipulations including as to the loss amount, the use

of sophisticated means, and the number of victims, and contained a partial appellate waiver.  (*Id.* at 2-8).  That waiver read as follows:

> In exchange for the undertakings made by the government in entering this plea agreement, if the sentencing judge accepts these stipulations, [Petitioner] voluntarily and expressly waives all right to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. Notwithstanding this waiver provision, the parties reserve any right they may have under 18 U.S.C. § 3742 to challenge any aspect of the sentence that falls outside any applicable statutory minimum or maximum term of imprisonment, term of supervised release, or fine. The parties also reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category.

(*Id.* at 8).  The plea agreement did not bar counsel from arguing for any downward variances or adjustments to Petitioner's sentence, nor did it guarantee Petitioner any form of cooperation or other agreement from the Government which might reduce Petitioner's sentence.  (*Id.* at 1-8).  In signing his plea agreement, Petitioner acknowledged that he had read the plea agreement, discussed it and the waivers it contained with counsel, and that he understood the plea agreement. (*Id.* at 7).

As part of his guilty plea, Petitioner submitted to the Court an application for permission to plead guilty on October 19, 2015.  (Docket No. 15-546 at ECF No. 16).  In that application, Petitioner again confirmed that he had read and understood his plea agreement, and that he had discussed it with counsel.  (*Id.* at 5).  Petitioner also explicitly acknowledged in that application that his plea agreement contained an appellate waiver that would bar an appeal or collateral attack under the circumstances specified in his plea agreement.  (*Id.* at 6).

This Court held a plea hearing in Petitioner's case on October 19, 2015.  (Document 4

attached to ECF No. 14).    At that hearing, this Court explained the two charges in the information to Petitioner, and explained the maximum sentence applicable to Petitioner, as well as the mandatory two year consecutive sentence he faced on count two of the information.    (*Id.* at 4-5). Petitioner confirmed that he understood these issues.    (*Id.* at 8).    Petitioner thereafter confirmed that he understood that he was waiving his right to an indictment, to a trial by jury, to the right to confront the witnesses against him, the right to present a defense, and the presumption of innocence.    (*Id.* at 8-12).    Petitioner then agreed that he had read the plea agreement in full, that he discussed it with his attorney, and that he understood the agreement.    He also confirmed that no promises other than those in the plea agreement had been made to him, that no one had threatened him, and that he freely and voluntarily wished to plead guilty pursuant to the agreement because he was guilty of the charged offenses.    (*Id.* at 12-14).

This Court then explained to Petitioner that any guess his attorney had given him as to possible sentences was just that – a guess – and that Petitioner's applicable guidelines range and ultimate sentence would be up to the Court to determine and that Petitioner could not withdraw his plea out of dissatisfaction with the sentence this Court imposed.    (*Id.* at 14-17).    This Court also explained the applicability of the advisory sentencing guidelines and this Court's discretion in sentencing him, as well as the lack of parole in the federal system, all of which Petitioner confirmed that he understood.    (*Id.* at 15-16).    Petitioner then confirmed that he had read the application to plead guilty, that he had signed it, and that he had agreed to all of the answers contained in the application.    (*Id.* at 17-18).    Petitioner stated he had read and understood the application and that all of the statements on the form were his true and accurate answers to the questions contained on the form.    (*Id.* at 18).    Petitioner then provided a factual basis for his plea, which this Court

accepted.  (*Id.* at 18-22).   As it was clear that Petitioner's guilty plea was knowing and voluntary, this Court accepted his plea.  (*Id.* at 22).

Petitioner appeared before the Court for sentencing on April 20, 2016.  (Document 3 attached to ECF No. 14).   At sentencing, counsel for Petitioner did not dispute the recommended guidelines range for Petitioner's charges, but did present several arguments for a downward departure from the recommended range.  (*Id.* at 4-5).   First, counsel argued that Petitioner should receive a downward departure under the guidelines for acceptance of responsibility based on his admission of guilt and attempt to cooperate with the government through a pre-sentence proffer session with the Government notwithstanding the Government's decision not to offer a cooperation agreement.   (*Id.*).   Counsel also requested a downward variance based on Petitioner's diminished capacity arising out of his alleged gambling addiction which was supported by a report prepared on Petitioner's behalf by a "certified gambling therapist" who had evaluated Petitioner and concluded that he suffered from such an addiction.  (*Id.* at 6-7).   Specifically, counsel argued that Petitioner's gambling addiction amounted to a "pathological compulsion that diminishes his capacity to determine right and wrong" which results in his criminal activity.  (*Id.* at 7).   Counsel also argued that the Court should take Petitioner's prior 20 month sentence for violating supervised release be considered in imposing sentence as it arose out of the same series of events which led to Petitioner's instant prosecution even though Petitioner had pled to a lesser violation.  (*Id.* at 8).   Although counsel acknowledged that Petitioner believed that there may have been a double jeopardy issue in both pleading to a violation and pleading guilty to count two of the indictment of this matter, counsel "disagree[d]" and did not dispute that count two was not barred by that constitutional clause.  (*Id.* at 9).   Counsel did, however, express Petitioner's

request that he be credited for his supervised release violation sentence. (*Id.*). Thus, although counsel acknowledged Petitioner's considerable criminal history, which counsel considered the "elephant in the room," he requested that Petitioner receive a sentence on the lower end of the recommended guidelines range or "possibly below the guidelines range." (*Id.* at 8-10).

In sentencing Petitioner, this Court first observed that Petitioner's case presented a "remarkable situation in which [Petitioner's] criminal history rating substantially understated his criminal record." (*Id.* at 13). This Court noted that Petitioner's convictions began in 1985 and continued throughout Petitioner's adult life, resulting in a considerable number of convictions. (*Id.*). Having made that observation, the Court noted that Petitioner had on previous occasions both claimed to have a gambling addiction and at other times had reported he was not a gambler and simply used an alleged addiction "in hopes to receive a more lenient sentence." (*Id.* at 14). The Court further observed that even assuming that Petitioner's addiction was real and did affect his decision making process, Petitioner had previously been directed to attend Gamblers Anonymous and had "failed to attend any sessions" of such treatments following a previous release and had instead been arrested on new charges shortly after this failure. (*Id.*). Regardless of whether Petitioner did or did not have a gambler's addiction, the Court found that any such addiction would have no effect on Petitioner's sentence in light of his failure to engage in treatment previously despite being provided several prior opportunities to do so. (*Id.*). Petitioner's request for a downward variance on that basis was therefore denied. (*Id.*). Given Petitioner's considerable record and the severity of his criminal activity, this Court instead found "an overwhelming need to impose a significant sentence" in order to deter Petitioner from future criminal activity, and therefore rejected any downward variance or adjustment, including any such

variance based on the prior violation of supervised release sentence Petitioner had received.   (*Id.* at 15-16).

Finding the recommended guidelines range appropriate, this Court sentenced Petitioner to the middle of that range – to sixty-one months' imprisonment, including the mandatory two-year consecutive sentence on count two of the information.   (*Id.* at 16).   Petitioner was also sentenced to a concurrent three-year term of supervised release, appropriate fines, and a restitution amount of $58,944.73.   (*Id.* at 18).   After issuing this sentence, this Court directly advised Petitioner that he had "the right to appeal this sentence and conviction in this matter subject to any appellate waiver that may limit that right," and that the Clerk of the Court would file a notice of appeal on his behalf if he could not do so himself.   (*Id.* at 19).   This Court also informed Petitioner that the Court would "direct Mr. Condon[, his plea and sentencing counsel], to file such a notice of appeal on [Petitioner's] behalf if you request him to do so."   (*Id.*).   Petitioner, however, never requested that such an appeal be filed, and did not file an appeal of his conviction or sentence.   Instead, he filed this matter in May 2017, just over a year after his sentence.   (ECF No. 1).

## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.   Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral

> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255.   Unless the moving party claims a jurisdictional defect or a constitutional

violation, to be entitled to relief the moving party must show that an error of law or fact constitutes

"a fundamental defect which inherently results in a complete miscarriage of justice, [or] an

omission inconsistent with the rudimentary demands of fair procedure."   *United States v. Horsley*,

599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

*denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J.

2003).


**B.   Analysis**

**1.   No evidentiary hearing is necessary in this matter**

A district court need not hold an evidentiary hearing on a motion to vacate where "the

motion and files and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v.*

*Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   "Where the record, supplemented by the trial judge's

personal knowledge, conclusively negates the factual predicates asserted by the petitioner or

indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required."   *Judge*

*v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands*

*v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*,

587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.   Because Petitioner's claims are without

merit for the reasons expressed below, no evidentiary hearing is necessary in this matter.

**2.  Petitioner's ineffective assistance of counsel claims**

In his motion to vacate sentence, Petitioner presents four grounds for relief, all off which assert that Petitioner received ineffective assistance of counsel.   The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).   To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.   This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).   A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.*   The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.*   In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93.   "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.   The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A

reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.   Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief.   *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).   "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims.   *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81.

In his first claim, Petitioner contends that his attorney proved ineffective when he "failed to inform [him] of [his] ability to appeal [his] sentence.   (ECF No. 1 at 4).   In his reply, Petitioner clarifies that he was under the partially mistaken belief that he was barred from bringing any appeal by his guilty plea, that although he recognizes that this Court informed him of his right to appeal he was "not even in tune with the semantics [this Court] was articulating" and that the Court "could have been speaking Chinese" and he would have understood as much.   (ECF No. 16 at 3). Petitioner further alleges that although counsel told him that they could appeal at a bail hearing, counsel did not otherwise discuss with him an appeal and never asked Petitioner whether he wished to appeal following his sentence.   (*Id.*).   Thus, while Petitioner now contends that he would have filed an appeal had he been advised by counsel that he could appeal his sentence, he would have done so.[1]

---

[1]  Petitioner does not allege that he would not have pled guilty had he received a more thorough recitation of his appellate rights, and this Court therefore need not and does not address any such claim.

Before addressing the merits of this claim, the Court notes that the record strongly suggests that Petitioner was made aware that he had a right to appeal in his criminal matter.   Both his plea agreement and the application to plead guilty he signed and submitted to the Court directly informed him of the partial appellate waiver to which he was agreeing and specified the specific circumstances under which Petitioner was permitted to file an appeal.   Petitioner specifically stated to this Court during his plea that he had fully read, understood, and discussed both of those documents with his attorney to his satisfaction and that he was aware of all the terms of his agreement contained in the written plea agreement.   These "[s]olemn declarations in open court carry a strong presumption of verity" which cannot be refuted by mere conclusory allegations, such as Petitioner's contention that he was not paying attention during his plea and sentencing. *See Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977); *see also United States v. Erwin*, 765 F.3d 219, 230 (3d Cir. 2014); *United States v. Dickler*, 64 F.3d 818, 823 n. 7 (3d. Cir. 1995) ("[s]worn statements in a plea proceeding are conclusive unless the movant can demonstrate compelling reasons for questioning their truth").   Given the clear statements by Petitioner that he had fully read and understood both the plea agreement and application to plead guilty, and given that this Court explicitly advised Petitioner of his right to appeal at sentencing, and given the fact that Petitioner himself asserts that his counsel told him he could appeal following the bail hearing, the record itself strongly suggests that Petitioner was made aware of his appeal rights and the limits on those rights contained in his appellate waiver.

As the Third Circuit has explained, claims that counsel failed to consult with a petitioner regarding his desire or lack thereof to file an appeal are governed by the Supreme Court's ruling in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000):

11

[in *Flores-Ortega*,] the Court addressed whether counsel may be found deficient for failing to file a notice of appeal absent specific instruction from the defendant not to do so. Because the question concerned whether counsel's representation was constitutionally defective, the Court held that the two-part *Strickland* test governed its inquiry. [*Roe*, 528 U.S. at 476-77.] Applying that standard to the particular facts before it, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480[.] The Court further explained that it "employ[ed] the term 'consult' to convey a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478[.] Additionally, the Court instructed that courts undertaking this inquiry, as with all ineffective-assistance claims, "take into account all the information counsel knew or should have known." *Id.* at 480 . . . (citing *Strickland* [*v. Washington*, 466 U.S. 668, 690 (1984)]).

With respect to *Strickland*'s prejudice prong, the Court held that the harmless-error inquiry applied and that relief could not be granted unless the defendant "demonstrate[s] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484[.] The Court did not identify any determinative factors in this regard, but did stress that "evidence that there were non-frivolous grounds for appeal or that the defendant at issue promptly expressed a desire to appeal will often be highly relevant." *Id.* at 485[.]

*Shedrick*, 493 U.S. at 300-01; *see also Garza v. Idaho*, --- U.S. ---, 139 S. Ct. 738, 746 (2019)

(*Flores-Ortega* rule applies even where there is an applicable appeal waiver).

As Petitioner does not allege that he ever explicitly requested that counsel file an appeal

on his behalf, in order to determine whether counsel was ineffective, the Court must determine

whether a duty to consult Petitioner regarding an appeal arose in this matter because either "a

rational defendant would want to appeal" or "this particular defendant reasonably demonstrated to

counsel that he was interested in appealing." *Sherdrick*, 493 U.S. at 300-01.  By his own admission, Petitioner did not expressly demonstrate an interest in appealing.  Petitioner does not allege that he ever asked counsel about whether he could appeal, nor that he otherwise expressed to counsel his displeasure with his ultimate sentence.  Likewise, despite being specifically advised by the Court, Petitioner did not request that counsel or the clerk of court file a notice of appeal on his behalf.  Under the circumstances, and the lack of any allegation by Petitioner of acts he took to indicate to counsel that he may wish to file an appeal, Petitioner has not presented facts which could show that he reasonably demonstrated that he specifically was interested in an appeal.

Turning to the question of whether a rational defendant would want to appeal under these circumstances, the Court finds that Petitioner has failed to show that a rational defendant in his position clearly would have wanted to appeal.  Petitioner received a sentence within the middle of the guideline range applicable to him under the plea agreement to which he agreed, a sentence he should certainly have expected was a real possibility notwithstanding his counsel's motion for a downward departure and his entirely mistaken belief which counsel himself dispelled both at and before sentencing, discussed below, that his guilty plea to count two was an improper imposition of double jeopardy.  Petitioner was also subject to a fairly broad appellate waiver which essentially barred all but two groups of claims – claims that this Court ignored or refused to apply the stipulations in the plea agreement, or an appeal of the Court's criminal history category.  Petitioner has not presented, and conceivably could not present, any non-frivolous claim as to either class of claims – his history places him indisputably in the highest criminal history category, and this Court accepted all of the stipulations contained in the plea agreement.  As Petitioner has presented no other non-frivolous claim which he could have raised on appeal, and has not

otherwise presented any other facts which would suggest that a rational defendant in his position would have desired to appeal, he has failed to make such a showing.   Petitioner has thus failed to show that a duty to consult regarding an appeal attached in this matter, and thus has not set forth facts capable of showing that counsel was deficient in failing to consult regarding an appeal.   As Petitioner has not shown that counsel's deficient performance, and the record otherwise indicates that Petitioner was aware of his appeal rights, Petitioner's first claim presents no valid basis for relief.

Petitioner next asserts that his plea counsel proved ineffective in failing to challenge count two of the information to which Petitioner pled guilty as Petitioner believes that the Government should have been barred from pursuing that charge as his violation of supervised release arose out of the same incidents that gave rise to count two.[2]   Petitioner's claim, however, is based on a faulty premise.   Regardless of the outcome of his violation of supervised release proceeding –

---

[2] In his reply brief, Petitioner attempts to raise two new claims related to this ineffective assistance claim – that his counsel should have also raised an argument regarding jail credits at sentencing because he believes his violation sentence had run before he was sentence, and a claim in which he asserts that he would not have pled guilty to the violation of supervised release if he knew that he could have been charged with count two.   (ECF No. 16 at 4).   As these claims were raised for the first time in Petitioner's reply, this Court need not address them as they have been improperly raised.   *See Judge*, 119 F. Supp. 3d at 284 basic fairness "requires that an opposing party have ... fair notice of his adversary's claims, as well as an opportunity to address those claims" and courts may therefore reject claims raised for the first time in a reply brief in a § 2255 proceeding); *see also Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998) (new arguments or claims "cannot be raised for the first time in reply briefs").   Even were the Court inclined to consider them, those claims are also clearly time barred as they were first raised in Petitioner's July 2018 reply brief, more than two years after Petitioner's conviction in this matter became final and nearly four years after his violation of supervision sentence was entered.   *See, e.g.,* 28 U.S.C. § 2255(f) (§ 2255 claims subject to one year statute of limitations); *Dodd v. United States*, 545 U.S. 353, 357 (2005) (in most cases, including this one, statute of limitations runs from date on which conviction becomes final); *Kapral v. United States*, 166 F. 3d 565, 577 (3d Cir. 1999) (where no appeal is taken, one year § 2255 statute of limitations begins to run when time to appeal expires).

whether he pled, as he actually did, to the alternate violation of leaving the state without authorization rather than to the violation based on the criminal acts leading to his prosecution in the underlying criminal matter or had he instead pled to the violation based on his new criminal activity – the Government remained free to bring new charges as a conviction of a violation of supervised release does not provide Double Jeopardy protections against new criminal charges based on the same criminal activity which resulted in the supervised release violation.   *See, e.g., United States v. Dees*, 467 F.3d 847, 853-54 (3d Cir. 2006).   This is because the penalties for violations of supervised release are treated as arising out of the original conviction that resulted in the imposition of the period of supervised release; the Double Jeopardy clause does not prevent actions which violate supervised release from being used to violate multiple separate terms of supervised release or as the basis for new charges in addition to a violation of supervised release. *Id.*; *see also Johnson v. United States*, 529 U.S. 694, 701 (2000); *United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995); *United States v. Clark*, 984 F.2d 319, 320 (9th Cir. 1993) (the "same actions by a [person subject to supervised release] can lead to direct punishment and can also constitute the basis" for a violation of supervised release).   Any objection by counsel to Count Two of the information on this basis would therefore have been patently without merit.   Counsel cannot prove constitutionally ineffective in failing to raise a meritless objection.   *Wets v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011).   Petitioner's second claim is therefore without merit.

Petitioner next argues that counsel proved ineffective insomuch as he believes that counsel should have filed a motion or request for an evidentiary hearing on the issue of Petitioner's alleged diminished capacity.   In his reply brief, Petitioner clarifies that he takes issue with counsel's

15

choice of using a gambling addiction therapist rather than a psychiatrist or psychologist to support his claim that his gambling issues amounted to a diminished capacity sufficient to warrant a sentence reduction.   Petitioner suggests that such an expert could have testified that, rather than a mere gambling addiction, he suffered from "an addictive mania" which compelled his criminality. Petitioner, however, provides no certification or other form of expert testimony from a psychiatrist or psychologist in support of this claim, instead he merely relies on his own belief that he suffered from this mania as a basis for deriding his plea counsel's performance.   Petitioner's failure to provide the testimony or a certification from a psychiatrist, psychologist, or other expert substantiating his alleged diminished capacity is fatal to his ability to show prejudice – without the testimony of a relevant expert, Petitioner cannot show that his counsel was ineffective by failing to present the testimony of such an expert to this Court, either at sentencing or at a proposed hearing on Petitioner's alleged diminished capacity.  *See, e.g., Judge*, 119 F. Supp. 3d at 285. Ultimately, the only evidence in the record supportive of Petitioner's claim that he had a diminished capacity is the report of the gambling addiction therapist provided at sentencing by counsel which this Court found insufficient to warrant a sentencing reduction even assuming Petitioner did suffer from a gambling addiction.  Petitioner has failed to present any evidence other than his own bald assertion that he suffered from any mania or other capacity diminishing condition, and has thus utterly failed to show any prejudice he suffered, and his ineffective assistance claim fails for that reason.

In his final claim, Petitioner contends that his attorney proved ineffective in attempting to initiate a cooperation agreement with the Government.   Had counsel not urged him to pursue cooperation as a possible means of reducing his sentence, Petitioner states that he "would not have

plead so early." (ECF No. 1 at 8). In his reply brief, Petitioner attempts to reconstrue his claim by asserting that, had he known the Government would not offer him a recommendation for a cooperation based sentence reduction or that the Government would oppose his request for a downward departure, he would not have agreed to plead guilty without first fighting the sophisticated means guidelines enhancement to which he agreed in his plea agreement. (ECF No. 16 at 7). Petitioner admits, however, that he both entered his plea knowingly, that no one made any promises of a cooperation agreement or the Government's acquiescence to his request for a downward departure, and that he was guilty of the charged offenses. (*Id.*). Although Petitioner contends that his attorney did not inform him that the Government was not interested in cooperation at a certain point before sentencing, Petitioner admits that counsel told him that the Government refused further cooperation meetings. (*Id.* at 10).

First, the Court notes that to the extent that Petitioner faults counsel for "failing" to obtain a cooperation agreement, counsel had no power to provide him with such an agreement. Only the Government can decide to file a 5K1.1 letter seeking a reduced sentence, and counsel had no ability to force or otherwise coerce the Government to provide Petitioner with such a letter. Counsel therefore cannot have been ineffective in failing to acquire such a letter on Petitioner's behalf. Likewise, as the plea agreement did not forbid the Government from opposing any motion for a downward departure, counsel could also not have been ineffective in preventing the Government from arguing against his requests for a downward departure or variance.

Chiefly, however, Petitioner in his final claim appears to contend that counsel was ineffective insomuch as he coerced Petitioner to plead guilty by not providing him adequate information regarding the Government's position regarding cooperation and opposition to any

17

downward departure.   In relation to a guilty plea, counsel is required to provide a defendant with sufficient information that he can "make a reasonably informed decision whether to accept a plea offer," which will generally require counsel to discuss with a petitioner the facts of his case, his likelihood of conviction, and his comparative sentencing exposure at trial and through a plea. *United States v. Bui*, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013); *see also Lafler*, 566 U.S. at 163; *Hill v. Lockart*, 474 U.S. 52, 57-58 (1985). Even where a Petitioner can show that counsel did not provide adequate advice, he is still required to show that he was prejudiced to make out his claim.   In the plea context, this requires the petition to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [which i]n the context of pleas [requires] a [petitioner] show the outcome of the plea process would have been different with competent advice."   *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).   As Petitioner accepted a plea agreement in this case, he would have to show that he would not have pled guilty and instead would have insisted on going to trial had he been provided adequate advice.   *See Missouri v. Frye*, 566 U.S. 134, 140-41 (2012); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Petitioner's central contention regarding deficient performance is that counsel did not provide him enough information about the Government's position regarding a 5K1.1 cooperation letter and its ability to oppose any request for a downward departure.   Petitioner thus relies on his mistaken belief that he would receive a much lower sentence – specifically time served (*see* ECF No. 16 at 7) - than the one imposed as his basis for taking issue with counsel in this respect. Petitioner, however, was directly informed by this Court of the statutory maximum sentence and the requirement that he receive a consecutive sentnece on count two, as well as the fact that it was

18

this Court – and no other – that would determine his sentence; Petitioner was also specifically informed that any suggestion as to sentence by counsel was no more than an educated guess and that he could not retract his plea if he were unhappy with the result.   Petitioner was thus made well aware that, even at the time of his guilty plea, he would at the very least receive a two year sentence on Count two and that this sentence would be *in addition* to any sentence imposed on count one.   Petitioner also admits, and continues to admit, that he had been made no promises other than those in his plea agreement as to the outcome of his case.   He thus clearly was aware that there was no guarantee that he would receive a 5K1.1 letter.   Likewise, as he informed the Court that he had read and understood his plea agreement and had received no other promises from counsel or otherwise, at the time of his plea he should also have known that there was no guarantee that the Government would not oppose any motion for a downward departure.   Petitioner's attempt to fault counsel for his own misapprehension of the likelihood of a 5K1.1 letter or non-opposition for his downward departure requests appears to arise out of little more than his own rose-colored view of his case and his wish that counsel had dispelled him of these views, which it is not clear Petitioner ever brought to counsel's attention.   Instead, even Petitioner's own allegations suggest that counsel did attempt to dissuade him insomuch as Petitioner admits counsel told him that the Government was not interested in further proffer sessions.

In any event, during his plea hearing, in his plea agreement, and in his applicatio nto plead guilty, Petitioner was made well aware of the range of sentences he faced by pleading guilty, and was made clearly aware of the applicable statutory minimums and maximums.   Even knowing this information, he chose to press on with his guilty plea.   It thus appears that counsel provided him with the necessary advice, and it was Petitioner's own optimism with which he is now

19

unhappy.

Even assuming *arguendo* that Petitioner could show deficient perfromance based on his optimistic view of what his sentencing would entail even in the face of the direct information he was given by this Court, Petitioner has failed to show prejudice in this case.   Although Petitioner states for the first time in reply that, had he known facts of which he was clearly aware after his plea hearing – that there was no guarantee of a cooperation agreement or that the Government would not oppose his downward departure requests – he would not have pled guilty without first challenging the sophisticated means enhancement contained in his plea agreement, he does not allege that he would have sought to proceed to trial.   He likewise does not say that, had he been given this information he would not have accepted the plea agreement to which he pled guilty. Instead, Petitioner attempts to have his cake and eat it, too – he states that he wished to plead guilty because he was guilty and suggests he had no interest in proceeding to trial, but states that he would have "been more adamant" in challenging the sophisticated means enhancement in his plea agreement had he been more fully aware that there were no guarantees at sentencing.   This statement is not a clear statement that he would have turned down the plea agreement in this case, it is instead a speculative suggestion that he would have sought a plea agreement without that enhancement.   As there is no evidence that such an alternative plea offer would have been offered, and Petitioner does not state that he would have gone to trial rather than plea to the offered agreement, Petitioner has provided nothing more than speculation and his wish that a "better" plea had been available, neither of which is sufficient to establish *Strickland* prejudice in this context. *Frye*, 566 U.S. at 140-41; *Hill v. Lockhart*, 474 U.S. at 59.   Petitioner's final claim thus fails to establish ineffective assistnace, and his motion to vacate sentence is denied in its entirety.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right."   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's claims are all clearly without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## IV. CONCLUSION

For the reasons stated above, Petitioner's motion to vacate sentence is DENIED and Petitioner is DENIED a certificate of appealability.   An appropriate order follows.

_____s/ Stanley R. Chesler___
Hon. Stanley R. Chesler,
United States District Judge

Dated: April 15, 2020